UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Alex Bartenberger et al., | |
| Plaintiffs, | Case No. 1:16-cv-00634 |
| v. | Judge Michael R. Barrett |
| Geoffrey P. Damon, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Geoffrey P. Damon's Motion for Summary Judgment. (Doc. 25). Plaintiffs, Alex and Cheryl Bartenberger, filed a Response in Opposition (Doc. 26) and Defendant filed a Reply (Doc. 27).

**I. BACKGROUND**

    **a. Factual Background**

Plaintiffs are an adult son, Alex, and his mother, Cheryl. In the 1990s, when Alex was a minor, he was involved in two automobile accidents: one in September 1994 and one in June 1997. (Doc. 2, ¶¶ 8,9). Plaintiffs filed a consolidated a personal injury action against the others involved in those automobile accidents in the Hamilton County Court of Common Pleas in Case No. A9903176. (*Id.*, ¶ 9). The consolidated personal injury action was dismissed[1] and refiled, after Plaintiffs retained attorney Barbara Bison Jacobson, in the Hamilton County Court of Common Pleas in Case No. A0104769. (*Id.*,

---

[1] It is unclear whether this dismissal was by Plaintiffs, stipulation, or court order.

¶¶ 10-11). In March 2008, the court permitted attorney Jacobson to withdraw from her representation of Plaintiffs in Case No. A0104769. (*Id.*, ¶ 13). Plaintiffs retained another attorney, Ronald Denicola, and, in September 2008, the court issued an order dismissing Case No. A0104769 with prejudice in light of the parties' notice of settlement and agreement to dismissal. (Doc. 3 at PageID 164).

Plaintiffs assert that attorney Jacobson and the law firm that she worked for were negligent in their administration of Case No. A0104769, as they allegedly failed to complete discovery, present expert witnesses in a timely manner, and identify medical experts. (Doc. 2, ¶ 12). Plaintiffs contend that "they were compelled to settle their claims without [the] benefit of [a] trial on the merits, for sums substantially less than they would have recovered had the claims been tried on the merits, or face dismissal of [the] action with prejudice" due to attorney Jacobson's and her firm's alleged failures in Case No. A0104769. (*Id.*, ¶ 14).

On March 27, 2009, Plaintiffs, through attorney F. Harrison Green, filed a legal malpractice action against attorney Jacobson and her firm regarding their handling of Case No. A0104769 in the Hamilton County Court of Common Pleas and that legal malpractice action was Case No. A0903157. (*Id.*, ¶ 16). On April 2, 2010, the court permitted attorney Green to withdraw from his representation of Plaintiffs. (*Id.*, ¶ 16). On May 25, 2010, the court dismissed Case No. A0903157 without prejudice pursuant to Ohio Civ. R. 41(B). (*Id.*, ¶¶ 17, 21, 24); (Doc. 2 at PageID 143).

On May 10, 2011, Plaintiffs and Defendant Damon entered into an "Attorney-Client Fee Contract" wherein Plaintiffs retained Defendant to represent them "in litigation against Barbara Bison Jacobson and others which must be re-filed on or before May 25, 2011."

(*Id.* at PageID 139). The parties' "Attorney-Client Fee Contract" included language stating that Defendant could terminate the attorney-client relationship concerning the litigation against attorney Jacobson for cause and that, if he exercised his right to withdraw as counsel, any "[n]otification of withdrawal shall be made in writing to" Plaintiffs. (*Id.* at PageID 140).

On May 23, 2011, Plaintiffs, through Defendant, refiled their legal malpractice action against attorney Jacobson and her law firm regarding their handling of Case No. A0104769 in the Hamilton County Court of Common Pleas and that legal malpractice action was Case No. A1104003. (*Id.* at PageID 142-153). On November 3, 2011, Plaintiffs, through Defendant, entered a voluntary notice of dismissal without prejudice, pursuant to Ohio Civ. R. 41(A), in Case No. A1104003. (Doc. 3 at PageID 165).

In February 2012, Defendant joined the Law Offices of Blake R. Maislin, LLC. (*Id.* at PageID 171, Blake Maislin Aff. ¶ 3). On October 9, 2012, he mailed Plaintiffs a letter with the subject "RE: <u>Letter of Declination / Re-Filing of A1102292[2] and A1104003</u>." (Doc. 25-10 at PageID 466) (emphasis in original). Defendant informed Plaintiffs that he discussed the Jacobson matter with Mr. Maislin and that "<u>this office is declining to re-file these actions on your behalf</u>, because

> [t]here would be substantial expense involved in the prosecution of these actions which would require a $15,000.00 cost deposit. I know that issue had been problematic during the original prosecution of these matters. . . . **As to Case No. A1104003, that case must be re-filed prior to November 02, 2012 or the claims will be barred by the statute of limitations.** I have enclosed time-stamped copies of the complaints filed in those actions for your review. Please call the office to make arrangements to pick up the files pertaining to these matters.

*Id.*

---

[2] This matter was a lawsuit filed by Plaintiffs, through Defendant, against attorney Green. (Doc. 25-4 at PageID 281-82).

On October 15, 2012, Plaintiff Cheryl Bartenberger called the Law Offices of Blake Maislin, LLC, acknowledged receipt of Defendant's letter, and requested an appointment with Defendant and Mr. Maislin. (Doc. 25-2). Unbeknownst to the law office manager and Mr. Maislin who each spoke with Plaintiff, Plaintiff recorded that phone call. (Doc. 25-3). On October 24, 2012, Plaintiff Cheryl Bartenberger met with Defendant and Mr. Maislin at the Law Offices of Blake Maislin, LLC. (Doc. 25-4). Again, unbeknownst to everyone at that meeting but Plaintiff, she recorded the meeting. (Doc. 25-3); (Doc. 25-5, Defendant Aff.). During that meeting, Mr. Maislin told Plaintiff:

- that the Jacobson matter was not the sort of case his firm handles, Defendant works for Mr. Maislin's firm now, and Mr. Maislin does not want Defendant to handle the case. (Doc. 25-4 at PageID 285-86).

- "we're not going to take the case." (*Id.* at PageID 288).

- "yeah, but [the work that these cases are going to take is] not going to be from here." (*Id.* at PageID 293).

- "Look, either way it's an expensive, complicated case that we're not going to take." (*Id.* at PageID 306).

- "I hired [Defendant] because [he]'s a good attorney, but it's my call and we're not taking it." (*Id.*).

- "It's not [Defendant's] call [to take the case], it's my call." (*Id.* at PageID 307).

- "Well [Defendant] works for me; our office is not refiling this case." (*Id.* at PageID 313).

Mr. Maislin also told Plaintiff:

- that Mr. Maislin understood that Plaintiff was "in a pinch with the deadlines" and that they "can certainly draft documents for [her] to file on [her] own to save these dates, if [she] wanted to shop [her] case around." (*Id.* at PageID 285-86).

- "Do you want us to draft documents that you can file on your own to save the statute coming up in November?" (*Id.* at PageID 295).

4

- "If you want us to draft documents so that you're not under the gun and help you file them, we can certainly do that in your name which will give you time to shop the case around." (*Id.* at PageID 306).

- "Do you want us to create the documents for you so that you can refile it so you aren't under the gun for November 2?" (*Id.* at PageID 310).

- "The only option that I'm going to give you is whether or not you want us to give you documents for you to save your statute of limitations, that's the only choice I'm giving you or not. And, I mean that most respectfully, but I am not refiling this case." (*Id.* at PageID 313).

- "Do you want us to draft up these complaints that you can file them by yourself before November?" (*Id.* at PageID 316).

Plaintiff responded that she understood that whether Defendant was going to take her case was Mr. Maislin's call (*id.* at PageID 307) and she would like the Law Offices of Blake Maislin to draft a complaint for her to file in the Jacobson matter because she "need[ed] something to go to court by next week" (*id.* at PageID 316). Defendant returned some of the case files related to the Jacobson matter to Plaintiff after the meeting ended. (*Id.* at PageID 342-44); (Doc. 25-10, Cheryl Bartenberger Depo. at 34, PageID 405-06); *see* (Doc. 26-11).[3]

On October 30, 2012, Defendant e-mailed Plaintiff. (Doc. 25-10, Cheryl Bartenberger Depo. at 34, PageID 411; Ex. 5 at PageID 467). The e-mail, in its entirety, states: "Cheryl: Attached to this e-mail please find the Complaint in Word formatting for re-filing." (*Id.* at PageID 467.) Mr. Maislin asserts that he "provided simple clerical assistance relating to the Jacobson Legal Malpractice Suit complaint, such as updating the caption." (Doc. 3 at PageID 172, Blake Maislin Aff. ¶ 6).

---

[3] Plaintiff states that she did not receive all of the case files regarding the Jacobson matter from Defendant until May 2014. *Id.*

5

On November 1, 2012, Plaintiffs, appearing pro se, refiled their legal malpractice action against attorney Jacobson and her law firm regarding their handling of Case No. A0104769 in the Hamilton County Court of Common Pleas and that legal malpractice action was Case No. A1208594. (Doc. 25-6); (Doc. 26-7). On November 6, 2012, the defendants in Case No. A1208594 filed a motion to dismiss that matter and argued that Plaintiffs' claims were barred by the statute of limitations and the Ohio Savings Statute could not be used more than once to revive the same claims. (Doc. 25-9); (Doc. 25-10 at PageID 468-72).

On November 12, 2012, Plaintiff Cheryl Bartenberger e-mailed Defendant, and carbon copied Mr. Maislin, with the subject line "Re: Case No. A1208594." (Doc. 25-10, Cheryl Bartenberger Depo. at 34, PageID 422); (Doc. 25-10 at PageID 485-86). She stated that she "filed the Pro Se complaint for the [Jacobson matter] you prepared for me" and that she had received the defendants' November 6, 2012 motion to dismiss. (Doc. 25-10 at PageID 485). She stated that the motion to dismiss "says that I can not re-file this case as it was already dismissed twice before," asked, "[i]s this true?" and stated that "[l]ast year when you did the voluntary dismissal with the right to re-file you informed me that you had checked and determined that I could in fact re-file." *Id.* Among other questions, Plaintiff asked Defendant: "[d]o I need to answer the motion? If so by when? With what? I need your help!" *Id.* Plaintiff stated that "[y]ou declining to re-file this case at this late date have put Alex and I at a great disadvantage." *Id.* at PageID 486.

On the morning of November 20, 2012, Defendant responded to Plaintiff Cheryl Bartenberger's November 12, 2012 e-mail. (Doc. 26-10). He stated that "[t]here was no guarantee that a third filing would not be subject to a Motion to Dismiss" and that, "[i]f the

6

third filing gets dismissed, you will need to file a Motion for Relief from Judgment pursuant to Civil Rule 60(B) of the Case # A1104003." *Id.* He included four other sentences and stated that those sentences were "the law which will have to be argued" in response to the defendants' motion to dismiss in Case No. A1208594. *Id.* He concluded, "I hope this helps you respond to the motion." *Id.* Later that afternoon, Plaintiffs filed a "request for extension of time to seek legal counsel and to file an answer to defendants motion to dismiss" in Case No. A1208594. (Doc. 25-8). Plaintiffs requested a 30-day extension of time to find legal counsel and informed the court that "Plaintiffs learned shortly before the statute was to lapse that counsel had withdrawn from representation due to affiliation with new law firm" and "[w]e are currently without legal counsel." *Id.*

On November 30, 2012, the court denied Plaintiffs' request for an extension of time and granted the defendants' motion to dismiss in Case No. A1208594. (Doc. 25-9).

### b. Procedural Background

On November 19, 2013, Plaintiffs filed a legal malpractice action in the Hamilton County Court of Common Pleas against Defendant Damon, Mr. Maislin, and the Law Offices of Blake R. Maislin, LLC. (Doc. 2, ¶ 1); (Doc. 26-11). On December 14, 2014, Plaintiffs filed a notice of dismissal pursuant to Ohio Civ. R 41(A)(1) for that action. *Id.* On December 14, 2015, Plaintiffs refiled their legal malpractice action against Defendant Damon and the Law Offices of Blake R. Maislin, LLC, in the Hamilton County Court of Common Pleas. (Doc. 2). The court granted the Law Offices of Blake R. Maislin, LLC's motion for summary judgment (Doc. 1-1 at PageID 124-25) and Defendant Damon removed the case to this Court based on diversity jurisdiction (Doc. 1).

Defendant moves for summary judgment and argues that Plaintiffs' malpractice claims are barred by Ohio's[4] one-year statute of limitations on legal malpractice claims. (Docs. 25, 27). Plaintiffs respond that summary judgment is inappropriate because there are genuine issues of material fact regarding the date that the attorney-client relationship between Plaintiffs and Defendant regarding the Jacobson matter terminated, as they allege that Defendant's November 20, 2012 e-mail is evidence that the relationship continued until that date and their case is timely. (Doc. 26).

## II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III. **ANALYSIS**

"An action for . . . malpractice other than an action upon a medical, dental, optometric, or chiropractic claim . . . shall be commenced within one year after the cause of action accrued." Ohio Rev. Code § 2305.11(A). An action for legal malpractice accrues, and the statute of limitation begins to run,

---

[4] As the Court's jurisdiction is based on diversity of citizenship, the Court must apply the substantive law of the forum state. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Blaha v. A.H. Robins and Co.*, 708 F.2d 238, 239 (6th Cir. 1983) (per curiam).

> when there is a cognizable event whereby the client discovers or should
> have discovered that his injury was related to his attorney's act or non-act
> and the client is put on notice of a need to pursue his possible remedies
> against the attorney or when the attorney-client relationship for that
> particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St. 3d 54, 58, 538 N.E. 2d 398, 401 (1989). *See Hustler Cincinnati, Inc. v. Cambria*, 625 F. App'x 712, 719 (6th Cir. 2015) ("The limitations clock starts (1) when the client discovers or should have discovered that his injury was related to the attorney's malpractice (the discovery rule) *or* (2) when the attorney-client relationship for that particular transaction or undertaking terminates (the termination rule), whichever occurs later.") (emphasis in original) (internal quotation marks omitted).

### a. Discovery Rule

Plaintiffs do not respond to Defendant's argument that Plaintiffs discovered or should have discovered that their injury was related to Defendant's entry of a second notice of dismissal in the Jacobson matter—which operated as an adjudication of Plaintiffs' claims against Jacobson and her firm and barred further claims against them under the Ohio Rules of Civil Procedure—by the time of Plaintiffs' November 12, 2012 e-mail to Defendant and the Court construes Plaintiffs' silence as a concession. *Compare* (Doc. 25 at PageID 246) ("A 'cognizable event' occurred, at the latest, by November 12, 2012, more than one year before Plaintiffs filed their legal malpractice claims), *and* (Doc. 27 at PageID 664) ("Plaintiffs failed to present any counterargument or evidence to Mr. Damon's 'cognizable event' date" assertion), *with* (Doc. 26 at PageID 573) ("Notwithstanding Defendant's argument that there were a series of cognizable events between November 1, 2011 and November 12, 2012, whereby [Plaintiffs] should have

realized an injury sustained as a consequence of Defendant's actions, Defendant []
continued to provide legal advice to advance [Plaintiffs] claims against Jacobson until
November 20, 2012.").

### b. Termination Rule

The question of when an attorney-client relationship for a particular undertaking or transaction has terminated is typically a factual question to be resolved by a jury. *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St. 3d 385, 388, 528 N.E.2d 941, 944 (1988); *see Zell v. Klingelhafer*, 751 F. App'x 641, 646 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1299, 203 L. Ed. 2d 416 (2019), *reh'g denied*, 139 S. Ct. 1649, 203 L. Ed. 2d 920 (2019). However, summary judgment is proper when the conduct terminating the relationship is so clear and unambiguous that a reasonable juror could reach only one conclusion. *See id.*; *see also Koerber v. Levey & Gruhin*, 2004 WL 1344834, 2004-Ohio-3085, ¶ 19 (Ohio Ct. App. June 16, 2004).

"[F]or purposes of the accrual of a legal malpractice claim, an attorney-client relationship ends 'when the attorney-client relationship for that *particular transaction or undertaking terminates.*'" *FDIC v. Alexander*, 78 F.3d 1103, 1110 (6th Cir. 1996) (emphasis original) (quoting *Zimmie*, 538 N.E. 2d at 401). "The attorney-client relationship is consensual in nature and may be terminated by either party." *Thayer v. Fuller & Henry, Ltd.*, 503 F. Supp. 2d 887, 891 (N.D. Ohio 2007). Although a client may terminate the attorney-client relationship at any time, [a]n attorney . . . may not withdraw from the attorney-client relationship absent notice to his or her client and, if mandated by applicable court rules, permission from the court." *Columbus Credit Co. v. Evans*, 82 Ohio App.3d 798, 804, 613 N.E. 2d 671 (1992).

Ohio courts determining whether a genuine issue of material fact exists as to the termination date of an attorney-client relationship distinguish between two categories of cases:

> 1) those in which an affirmative act by the attorney or client clearly signals his or her intention to end the parties' professional relationship; and 2) those in which neither the attorney nor client exhibits a clear intention to terminate the relationship, but continuing to bind the parties to each other would be objectively unreasonable.

*Thayer*, 503 F. Supp. 2d at 891 (internal quotations omitted). Regarding the first category of cases, wherein the attorney-client relationship terminates due to an affirmative act, an example of such a termination "would be a formal letter specifically indicating that the representation has terminated." *Busacca v. Maguire & Schneider, LLP*, 2005-Ohio-4215, ¶ 26, 162 Ohio App. 3d 689, 694, 834 N.E. 2d 856, 859.

A rational jury could only find that Plaintiffs' and Defendant's attorney-client relationship terminated when Defendant and Defendant's boss told Plaintiff Cheryl Bartenberger that they would not represent her and her son in or refile the Jacobson matter seven times during their October 24, 2012 meeting. *See Zell*, 751 F. App'x at 646; *Koerber*, 2004-Ohio-3085, ¶ 19; *see also* (Doc. 25-4 at PageID, 285-86, 288, 293, 306, 307, 313). Moreover, prior to being informed in-person that Defendant would not represent Plaintiffs in or refile the Jacobson matter, Defendant informed Plaintiffs in writing that he would no longer represent them or refile anything in the litigation against Jacobson or her firm. *See Busacca*, 834 N.E. 2d at 859. *Compare* (Doc. 2 at PageID 139-40) (Attorney-Client Fee Contract), *with* (Doc. 25-10 at PageID 466) (Defendant's October 9, 2012 letter to Plaintiffs). By October 24, 2012, Defendant and his boss had

11

informed Plaintiffs, in writing and in-person, that Defendant refused to represent them further regarding the Jacobson litigation at least eight times.

The Court is not persuaded by Plaintiffs' attempt to create a factual dispute regarding whether Defendant continued to represent Plaintiffs until November 20, 2012 and render summary judgment improper. (Doc. 26). Although Plaintiffs assert that Defendant prepared the complaint attached to the October 30, 2012 e-mail for Plaintiffs to file in Case No. A1208594 (*Id.* at PageID 574), Mr. Maislin updated the complaint just as he offered to do during the October 24, 2012 meeting when he stated "[t]he only option that I'm going to give you is whether or not you want us to give you documents for you to save your statute of limitations, that's the only choice I'm giving you or not. And, I mean that most respectfully, but I am not refiling this case," (Doc. 25-4 at PageID 313). *See* (Doc. 3 at PageID 172, Blake Maislin Aff. ¶ 6) ("In or around October 2012, I provided simple clerical assistance relating to the Jacobson Legal Malpractice suit complaint, such as updating the caption.").

Similarly, the Court is not convinced that Defendant's November 20, 2012 e-mail constitutes legal advice that extended this particular attorney-client relationship, because Plaintiffs, later that same day, informed the judge presiding over in Case No. A1208594 in the Hamilton County Court of Common Pleas that they "learned shortly before the statute was to lapse that counsel had withdrawn from representation due to affiliation with new law firm" and "[w]e are currently without legal counsel." (Doc. 25-8). Plaintiffs' current argument before this Court belies their prior argument before the Hamilton County Court of Common Pleas. Most importantly, the Court is not persuaded that the November 20, 2012 e-mail would change Defendant's clear and unambiguous conduct terminating

the attorney-client relationship—*i.e.*, one written and seven verbal confirmations that Defendant would no longer represent Plaintiffs in or refile the Jacobson matter—such that a reasonable juror could reach any other conclusion but that the attorney-client relationship ended as of October 24, 2012. *See Zell*, 751 F. App'x at 646; *Busacca*, 834 N.E. 2d at 859; *Koerber*, 2004-Ohio-3085, ¶ 19.

### c. Summary

Reasonable minds cannot differ as to whether Defendant continued to represent Plaintiffs with respect to the Jacobson matter after the October 9, 2012 letter and October 24, 2012 meeting and Plaintiffs do not contest Defendant's argument for purposes of the discovery rule. (Doc. 26); *see Zell*, 751 F. App'x at 646; *Busacca*, 834 N.E.2d at 859; *Koerber*, 2004-Ohio-3085, ¶ 19. Based on the facts of this case, the limitations clock started on the later of November 12, 2012 (the discovery rule) or October 24, 2012 (the termination rule). *See Hustler Cincinnati, Inc.*, 625 F. App'x at 719; *Zimmie*, 538 N.E. 2d at 401. Plaintiffs filed the current action against Defendant on November 19, 2013. (Doc. 2, ¶ 1); (Doc. 26-11). The Court holds that Plaintiffs filed this malpractice claim beyond the limitations period and summary judgment in Defendant's favor is warranted.

## IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that Defendant Damon's Motion for Summary Judgment (Doc. 25) is **GRANTED**. This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                        _s/ Michael R. Barrett_____
                                        Michael R. Barrett, Judge
                                        United States District Court